## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:25-CR-00157-CHB-MAS-2 |
| | ) | |
| BOBBY OSBORNE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

The motion before the Court asks the Court whether 78 years of nearly crime-free behavior can be outweighed by six recent years of persistent felony drug trafficking. Based on the specific facts in this case and the allegations in the Indictment, the Court finds that it can and grants the United States' motion for pretrial detention.

## I.    ANALYSIS

Defendant Bobby Osborne is charged with conspiracy to distribute methamphetamine and fentanyl, as well as four counts of distributing methamphetamine and one count of distributing fentanyl. [DE 1]. At the initial appearance, the United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(B)&(C). The Court conducted a detention hearing on January 9, 2026. [DE 41].

A.    LEGAL STANDARD

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA").   A detention presumption arises under the BRA as to both nonappearance and danger risk because of the nature of the charges.   18 U.S.C. § 3142(e)(3)(A).  The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry.  The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk.  *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Stone*, 608 F.3d at 945.  An unrebutted presumption requires detention.  A rebutted presumption remains a pro-detention statutory factor.  *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

The facts in Osborne's proffer and the bond report, described below, provided sufficient evidence to overcome the presumption as to both danger and nonappearance.  Specifically, the Court found the testimony of Osborne's daughter,

Brenda Taulbee, was more than sufficient to overcome the presumption. Thus, the burden shifted back to the United States to prove detention was warranted based on either nonappearance risks or danger to the community.

Detention premised on nonappearance requires preponderant evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The Court properly considers a wide range of proof. The nature and

quality of proof, though, impacts its probative value and weight in the detention calculus.

## B.    OSBORNE'S DANGER TO THE COMMUNITY

The § 3142(g) factors drive the analysis.  Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g).

### 1.    Osborne's History and Characteristics

The Court must consider many aspects of Osborne's background in making the decision to release or detain him.  Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]"  18 U.S.C. § 3142(g)(3).

Osborne lives alone in a mobile home on four acres of land in Irvine, Kentucky, where he has resided his enter life.  [Pretrial Services Report at 1-2].  However, for several months leading up to his arrest, co-defendant Devan Willoughby and another man lived with Osborne.  [Pretrial Services Report at 2].  Osborne proposed living with his daughter, Brenda Taulbee.  Taulbee testified on Osborne's behalf.  Taulbee was candid about her substance use disorder and testified she has been in recovery

for five years. Taulbee is employed and lives with her two minor children in Winchester, Kentucky. Taulbee discussed her relationship with her father, testifying that they have always been close and visit or talk on the telephone quite often. She further described his physical decline of the recent past and expressed concern for his various medical needs. Taulbee pledged to be a third-party custodian if needed and assured the Court that she would make certain Osborne obeyed any court-imposed conditions and attended court when required. Overall, the Court found Taulbee's testimony to be credible and compelling.

Osborne is 86 years old. He has no history of serious mental health disorders or substance use. [Pretrial Services Report at 3]. He is retired and disabled. [Pretrial Services Report at 3]. Osborne was convicted of assault and battery in 1967 and 1971; but convictions that are half a century old, even violent convictions, are of little concern to the Court. There is no evidence of other violence in Osborne's history. [Pretrial Services Report at 4].

However, in 2018, when Osborne was 78 years old, his life took an apparent turn. He was pulled over and, in the car he was driving, the arresting officer noted a strong smell of marijuana and located a bag with apparent marijuana residue and another bag with syringes, some loaded with a red substance. [Pretrial Services at 5-6]. Osborne also had $5,500 in cash on his person. Osborne was charged with drug trafficking, but that charge was ultimately dismissed. In August 2020, Osborne incurred new drug trafficking charges after law enforcement executed a search warrant at his residence and located approximately 71 grams of suspected heroin, 50

grams of suspected methamphetamine, $8,921 in cash, and drug paraphernalia.  Two
months later, while Osborne was still on pretrial release for the August 2020 charges,
he was arrested on new drug trafficking charges when law enforcement discovered
over an ounce of heroin on his person.  Osborne was convicted and sentenced to 10
years' imprisonment on the August 2020 charges and was also convicted and
sentenced to 5 years' imprisonment on the October 2020 charges, to be served
concurrently with the August 2020 sentence.  Both sentences have been suspended
pending resolution of his appeal and Osborne remains on bond in both cases. [Pretrial
Services Report at 6-7].

In 2022, Osborne was convicted of failure to dispose of an animal carcass and
in 2025 Osborne was charged with 35 misdemeanor counts of animal cruelty.  Those
counts remain pending.  While these were all misdemeanor incidents and unrelated
to drug trafficking, the Court considers the fact that the 2022 and 2025 misdemeanor
charges were incurred while Osborne was on bond for the August and October 2020
convictions.  The criminal activity alleged in the Indictment also occurred while
Osborne was on state bond for the 2020 offenses.  Even though Osborne had a 78-
year record without even a drug possession charge, the Court cannot overlook the
serious nature of his narcotics trafficking since 2019.

## 2.    The Nature and Circumstances of the Offense Charged

The BRA requires Courts to consider the "nature and circumstances of the
offense charged, including whether the offense . . . involves . . . a controlled
substance[.]"  18 U.S.C. § 3142(g)(1).  This subsection makes clear that in drafting
the BRA, Congress determined that "drug offenders pose a special risk of flight and

dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989). Specifically, "the risk of continued narcotics trafficking on bail constitutes a risk to the community." *Id.*

The United States proffered the following facts related to the allegations in the Indictment: In the course of an investigation of a drug trafficking operation, Osborne was identified as the supplier of codefendant Jeremiah Hix. A confidential informant purchased methamphetamine and fentanyl on several occasions from Osborne, personally, at his home in late 2024 and early 2025. When law enforcement searched Osborne's home in February 2025, they discovered nine grams of fentanyl, four grams of methamphetamine, and scales. "[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that itself poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010).

### 3.    **The Weight of the Evidence of Dangerousness**

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent or obstructive behavior. "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948).

Osborne has been a repeat drug trafficker in the past six years and is accused of being involved in substantial methamphetamine and fentanyl trafficking from his home in the instant Indictment. These are dangerous drugs that pose a serious risk to the health and safety of the community. Prior bond conditions have not deterred Osborne's criminal activity. Accordingly, the Court finds the weight of his dangerousness to society as a drug trafficker to be heavy.

### 4.    The Nature and Seriousness of Danger Posed by Release

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

As discussed above, the United States presented evidence of Osborne's recent drug trafficking convictions and his current charges. His drug trafficking convictions in the past six years and the current allegations indicate Osborne's commitment to dangerous criminal activity.

Osborne does not pose a direct physical threat to the community due to his age, health, and lack of violent history. However, "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community." *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004). Unfortunately, Osborne's prior performance on state bond conclusively shows he is likely to continue engaging in drug trafficking on release, and that there are no conditions that will mitigate that risk. Osborne is accused of distributing large quantities of methamphetamine and fentanyl from his home. Though the Court looked favorably upon Taulbee's

testimony, Osborne's felonious behavior on bond the past few years outweighs the anticipated good influence of Taulbee. It would simply be too easy for Osborne to resume drug trafficking from Taulbee's residence.

## C.  <u>NONAPPEARANCE</u>

The United States did not argue that Osborne is a risk of nonappearance, and, thus, did not carry its burden to prove by a preponderance of the evidence that he poses a risk of not appearing for future court dates.

## II.  <u>CONCLUSION</u>

For the reasons stated above, the United States did prove by clear and convincing evidence that Osborne is an unmitigable danger to the community or others. As to the risk of nonappearance, the United States did not demonstrate by a preponderance of the evidence that Osborne is unlikely to appear as required.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **GRANTED** and directs that and directs that Osborne be detained pending resolution of the allegations against him.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 27th of January, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY